# SULLIVAN,

## JANUARY TERM, A. D. 1846.

---

### KELSEY v. HARDY.

Where the son of an intestate dies under the age of twenty-one years, unmarried, and without brother, sister or mother, his maternal grand-mother inherits, to the exclusion of a paternal uncle, estate derived from the intestate.

APPEAL from a decree of the judge of probate. The parties submitted the following agreed case:

Henry Kelsey, the intestate, died under the age of twenty-one years, and unmarried, leaving estate derived by descent from his father, Henry Kelsey, deceased, of the value of three thousand two hundred and ten dollars; and also estate derived by immediate descent from his mother, Lois H. Kelsey, of the value of eleven hundred two dollars and sixty-two cents; the same having been principally derived to her from the estate of her deceased husband, Henry Kelsey.

The intestate, at the time of his decease, left neither father, mother, brother or sister, or the representatives of either, living.

Sarah Hardy, the appellee, is the maternal grand-mother, and the only surviving grand-parent of the intestate; several uncles and aunts, on the part of the mother, still surviving.

Benjamin Kelsey, the appellant, is the uncle, on the part of the father, of the intestate, and the only surviving child of the paternal grand-parents, deceased; three aunts

on the part of the father having deceased before the intestate, all leaving descendants still living.

If the court shall be of opinion that the appellee is entitled to the whole of said estate, as sole heir-at-law of the intestate, the decree of the probate court is to be affirmed. But if the court shall be of opinion that the appellant, in his own right, as next of kin on the part of the father, or as representative of the paternal stock of him, is entitled to take the whole or any part of said estate, then the decree of the probate court is to be so far reversed, and judgment rendered in favor of the appellant for his just distributive share of the estate, &c.

*Metcalf*, for the appellee.

*H. Newton*, for the appellant.

GILCHRIST, J.   This is a case in which a father's brother being the nearest paternal relative, and a mother's mother being the nearest maternal relative, severally claim under the statute to inherit the estate of an infant who has died intestate, unmarried, and without brothers or sisters, and who derived the estate principally from his father. It does not appear whether the estate is real or personal, nor has it been deemed by the counsel, nor is it in the opinion of the court, material what its nature is, since the statute which furnishes the law governing the case makes no distinction.   Principles of natural equity, were we at liberty to consider them in a case falling clearly within the purview of the written law, do not throw that clear light upon the question that is sometimes imagined, since our habits of considering such subjects have been formed, in a great degree, upon notions of right derived rather from convention than from immutable principles.   The Romans, who, in instituting their canons regulating the descent of property, proceeded upon the idea that property once hav-

ing become absolutely vested in a person, became his in the most unlimited sense in which man can possibly appropriate either chattels or land; and that, having by an act of cession, or by the termination of his life, and the possibility of enjoying it, once surrendered the property, it remained no longer in the feeblest sense his, concluded that those who were nearest of kin to the deceased intestate, should succeed to his possessions, without reference to the source from which he acquired them.

The feudal system, on the other hand, regarding property as vested in the feudatory, for special purposes admitting of reserved rights in the superior, who had an interest in requiring the heir to be of the blood of the first purchaser, established with respect to land, which it chiefly regarded, an entirely different system of canons of descent, founded upon the idea that the party seized in fee simple—the most absolute title known to the common law—had still but a qualified ownership. If he died without heritable issue, his land was, by a fiction, in a manner surrendered back to the dead ancester from whom he derived it, to be again transmitted through a collateral line to a living heir. And this is the system, which, under various modifications, prevails to this day in England with respect to land.

With respect to chattels, except in the few trifling cases of heir-looms, it never did prevail; but their distribution, in cases of intestacy, having in general pertained to the clergy, from the time that the Conqueror established the civil and ecclesiastical courts as distinct jurisdictions, followed the canons of the Roman law. So that, when the statute of distributions was enacted, (22 & 23 Charles II., ch. 10,) under which it became necessary for the courts to decide upon the degrees of consanguinity, it was held, from the earliest cases on the subject, and has been held ever since without any question, that these were to be determined by those canons. Sir Joseph *Jekyll*, in *Edwards* v.

*Freeman*, 2 P. W. 441; 2 Kent's Com. 339; *Holt*, C. J., in *Blackborough* v. *Davis*, 1 P. W. 49; 2 Black. Com. 515.

The differences between the civil and the common law, regulating the succession of property, were several. Among them the following, in the language of Dr. Arthur *Browne*—1 Browne's Civ. Law 223—is pertinent to the present case. "In their method of computing degrees they reckoned not as we do, from the common stock downwards, to each of the persons related, or to the most remote of them, but from the person *a quo* upwards to the common stock, and then downward again to the other party related." Hence, in the language of *Holt*, in the case last referred to, "the grand-mother is nearer of kin to the intestate than the aunt, for the aunt is not of kin to the intestate but as she derives her kindred from the grand-mother, her mother; and therefore, not in equal degree." Whereas, by the canon and the common law, those two relatives are regarded as standing in equal degree. 2 Bl. Com. 201; 1 Browne's Civ. Law. 522. The case of *Blackborough* v. *Davis* may be relied upon as an early authority to the point, that a grand-mother is of nearer kin than the brother or sister of a parent, within the meaning of the statute of distributions.

It may be proper here also to remark, that upon the meaning of the words in the statute, "that there be no representations admitted among collaterals after brothers' and sisters' children," it was held, in *Maw* v. *Harding*, 2 Vern. 233, that no representation was admissible except between brothers and sisters of the intestate; and that when the claim to distribution was among remote kindred to the intestate, although brothers and sisters to one another, the claim of representation was not to be allowed.

These decisions, made at an early period, have been since considered as having settled the construction of the statute in the particulars to which they relate, and have not been successfully drawn in question since, so far as the cases have been brought to our notice.

Kelsey *v.* Hardy.

The statute of 22 & 23 Charles II., referred to, has been with various modifications extensively adopted by the States of this Union, and extended in general to real property, which, with certain exceptions, follows the rules which regulate the descent and distribution of chattels. In settling its meaning and construction, the English authorities have been referred to and relied on without any regard whatever to the circumstance that the statute, as adopted here, embraced real estate as well as personal in its operation; nor has any case been referred to in which it has been held or intimated that that circumstance ought in any way to affect its construction.

There is one provision incorporated into the statute in this State, and some others, that in certain cases renders it necessary to inquire from what source the property was derived, in order to ascertain its course of descent. When a child of the intestate dies an infant and unmarried, then his share goes to his surviving brothers and sisters; and these, as was decided in a case which arose upon the last circuit, (*Clark* v. *Pickering*) must be those brothers and sisters who could have inherited from the parent, and not those of the half-blood, who would have inherited the estate if it had been purchased by the infant.

But, except in cases where the statute makes it necessary, we do not inquire from what source the estate was derived in order to settle its descent or distribution. *Parker* v. *Nims*, 2 N. H. 660. In this case, if the deceased had left brothers or sisters, they would have taken, as heirs of their common father, to the exclusion of the mother, or any claiming through her, of course. But such was not the fact, and the statute does not, in the case of an only child of an intestate, make any distinction founded upon the source from which the property has been derived. Its descent and distribution follow the general rule, which assigns it to the next of kin in equal degree. The grandmother is the second, and the uncle, deriving kindred

through a grand-parent, is of course in the third degree, and cannot share with her the inheritance. The appeal must, therefore, be dismissed.

*Decree affirmed.*